GENERAL FOODS CORPORATION, a Delaware corporation,
Plaintiff,

*vs.*

CRYO-MAID, INC., a Delaware corporation,
Defendant.

*New Castle, September 20, 1963.*

*Arthur G. Connolly,* of Connolly, Bove & Lodge, Wilmington, and *Albert L. Cuff* and *Michael Quillinan,* White Plains, N.Y., for plaintiff.

*William S. Potter,* of Berl, Potter & Anderson, Wilmington, and *G. Gale Roberson,* of Arvey, Hodes & Mantynband, Chicago, Ill., for defendant.

MARVEL, Vice Chancellor: Last May 13 plaintiff filed a complaint in this court in which it prayed for the entry of a declaratory judgment establishing the contractual rights and obligations of both plaintiff and defendant under an agreement entered into between them on November 13, 1962. The complaint does not allege that the agreement is ambiguous per se, the prime stated purpose of the suit being to obtain a judgment to the effect that plaintiff owes no further duty to defendant of a contractual nature other than the possible obligation of paying over $110,000 under the option provisions of the agreement. Relief against defendant's divulging of confidential information allegedly disclosed to it by plaintiff is also prayed for. Both plaintiff and defendant are Delaware corporations.

At this juncture it would, in my opinion, serve no useful purpose to analyze such agreement in detail. Suffice it to say that under its terms defendant agreed in return for reciprocal undertakings by plaintiff to turn over for commercial exploitation after testing information concerning a purportedly novel process for drying certain foods and beverages through freezing. One of the claims made for the process is that it reduces the time required for drying certain foods and beverages from six hours or more to less than an hour. The particular aspect of the process which interested plaintiff was its possible application to the preparation of soluble coffee, in the production and sale of which plaintiff's Maxwell House Division dominates the field. The agreement went on to provide that if a preliminary evaluation of the process led to a determination that it met certain standards of performance set forth in such agreement that an option period would then commence to run during which plaintiff would have the right either to purchase defendant's assets for an aggregate price of $2,500,000 or to terminate the option subject to certain contractual provisions calculated to protect defendant's interests.

According to the complaint, following the execution of the contract steps were taken to have it carried out, as a result of which

plaintiff announced that defendant's process did not meet all of its warranted performance standards and the agreement was accordingly at and end, leaving plaintiff free of any obligation other than to pay defendant the stipulated sum of $110,000. Defendant, needless to say, took an opposite view as to progress under the contract contending that the option period provided for in the contract had in fact been reached and that rather than being entitled to treat the contract as terminated, by April, 1963 plaintiff had become obligated to proceed with further tests for the purpose of determining the commercial potential of defendant's technique. Finally, the complaint alleges that during the testing of defendant's process, valuable information as to plaintiff's own manufacturing secrets was divulged and seeks injunctive relief against the disclosure of such information together with the fundamental judicial declaration that plaintiff owes defendant no further duty of performance either under the agreement proper or under the terms of the aforesaid option other than the possible payment of $110,000.

At the height of pre-litigation activities last spring, during which strenuous but fruitless efforts were being made to resolve differences between the parties, the present action was filed. Defendant reacted by filing its own complaint for declaratory judgment in the Circuit Court of Cook County, Illinois on May 15, the day it learned of the pending action. However, this first suit was later dismissed, a direct action against General Foods having in the meantime been prepared and filed on June 3 in the Superior Court of Cook County, Illinois. It is alleged in such pending action that notwithstanding Cryo-Maid's performance of the contract in issue after careful negotiation of its terms and after a turning away by Cryo-Maid from an attractive proposal of Nestle, General Foods had not only improperly repudiated its contractual obligations after assimilating the essentials of the secret process in question, but that while negotiating for a settlement of the parties' differences, had in bad faith and for the purpose of harassing and inconveniencing Cryo-Maid filed this pending action.

The motions before me are defendant's motion to dismiss the complaint or alternatively for a stay and plaintiff's motion to enjoin

defendant from continuing to press its Illinois suit for damages, for injunctive relief and a finding that General Foods has constructively exercised its option to purchase Cryo-Maid's assets for the sum of $2,500,000.

In the absence of "* * * a showing of special facts and circumstances indicating an equity of any sort such as would warrant a stay order * * *" this Court has refused to grant a stay of a domestic action even where a suit between the same parties for the same cause of action had been filed in Great Britain prior to the Delaware action, *Chadwick v. Gill,* 16 *Del.Ch.* 127, 141 *A.* 618. (But compare *Lanova Corporation v. Atlas Imperial Diesel Co.,* 5 *Terry* 593, 64 *A.2d* 419).

Furthermore, this Court has restrained the further prosecution of a New York action between the same parties on the same controversy filed one day later than the Delaware action, the Court commenting that

> "Suit was commenced by the insurer in this court to secure a cancellation of the policy and an injunction against actions at law for its collection; and soon thereafter the defendant herein, with advance knowledge, I think it is fair to say, that a bill for cancellation would be if it had not already been filed, inaugurated an action at law in the Supreme Court of New York based on the policy contract as a good and valid one. Thus by its action in New York the defendant sought to draw the subject of the Delaware bill to a jurisdiction of its own choosing for hearing and determination. That I am of the opinion should not be countenanced." *Connecticut Mutual Life Insurance Company v. Merritt-Chapman & Scott Corporation,* 19 *Del.Ch.* 103, 163 *A.* 646.

■ The theory of a declaratory judgment, while known to Roman law, was not judicially recognized in this country until some fifty years ago. Before the adoption of declaratory judgment acts in the several states, courts took no official cognizance of legal differences until a showing of wrongful injury could be made. Further-

more, the adoption of a declaratory judgment act does not mean that a court will give advisory opinions in civil matters. There must be an actual controversy at least brewing between the litigants, and the act is particularly helpful in patent matters, a field in which complaints of infringement are not always followed by coercive suits.

However, because relief is available under such laws they are subject to abuse, a typical instance of such being that of an insurance company about to be sued by a policy holder in one section of the country deliberately seeking to draw the controversy to its home base, thereby placing the party voicing a grievance in a disadvantageous position. *American Insurance Co. v. Bradley Mining Co. (D.C.N.D. Cal.), 57 F.Supp. 545.*

At the same time, a broadening concept of what is presence in a jurisdiction for purposes of suits in personam has led to multiple litigation, particularly in the federal courts. The result has been some jockeying for position. In other words, parties to an actual controversy have been known not only to seek to be first under the wire but also to run to the courthouse of their choice. Even in the leading case of *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 *U.S.* 180, 72 *S.Ct.* 219, 96 *L.Ed.* 200, in which the right of a manufacturer charged with patent infringement to have "* * * an equal start in the race to the courthouse, not a headstart * * *" was recognized, the Court stressed that the discretion of the trial judge in such matters is broad enough to protect the manufacturer from harassment of his customers even when he is anticipated. Thus, the answers to the questions before me lie in a proper exercise of my discretion, bearing in mind that "* * * in the absence of special facts or circumstances * * *", this Court should not lightly permit its clear jurisdiction in a matter to be rendered nugatory.

■ Defendant is a small, locally established corporation with a plant and office at Palatine, Illinois, the stock of which is held by eleven persons, all residents of Illinois. Plaintiff, on the other hand, is a large corporation which operates throughout the United States,

its principal office being in White Plains, New York. None of the witnesses who might be called by either side resides in Delaware, and all of defendant's probable witnesses are residents of the Chicago area. Conceivably it could be important for the trial judge to view defendant's machinery located near Chicago, not just at trial but at pre-trial.

There are, of course, other factors which might appropriately be discussed in disposing of the pending motions, particularly in light of the fact that General Foods anticipated being sued in the event of final breakdown of settlement talks. However, because I feel that a common sense over-all view of the matters to be resolved in this litigation indicates that such disputes can more fairly and effectively be dealt with in Illinois at the present time (Compare *Winsor v. United Air Lines, Inc.*, 2 *Storey* 161, 154 *A.2d* 561), I shall not at this time discuss such other factors.

Defendant's application for a stay will be granted on condition that defendant agree that any discovery taken in the Illinois proceeding be made available in the event the parties ultimately go to trial in Delaware. If at the expiration of sixty days from the entry of an order on this opinion it is made to appear that the stay to be entered is operating in an inequitable manner for any reason, a motion to dissolve it may be presented. Defendant's motion to dismiss the complaint will be denied without prejudice. Finally, plaintiff's motion to enjoin defendant's Illinois action will be denied, also without prejudice.