**LIFE ASSURANCE COMPANY OF PENNSYLVANIA, a Pennsylvania corporation, Plaintiff,**

v.

**ASSOCIATED INVESTORS INTERNATIONAL CORPORATION, a Delaware corporation, et al., Defendants.**

Court of Chancery of Delaware.

Oct. 3, 1973.

---

S. Samuel Arsht, David A. Drexler and Lewis S. Black, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

Richard F. Corroon of Potter, Anderson & Corroon, Wilmington, for defendants.

OPINION ON DEFENDANTS' MOTION FOR DISMISSAL OR STAY AND DEFENDANTS' MOTION TO VACATE SEQUESTRATION ORDER

QUILLEN, Chancellor:

This is the Court's opinion and order on defendants' motions seeking dismissal or stay of this action and vacation of a sequestration order.

The plaintiff in this action, Life Assurance Company of Pennsylvania (hereinafter "LACOP") is a Pennsylvania corporation engaged in the business of the sale of insurance through agents in the United States and overseas. The corporate defendant, Associated Investors International Corporation ("AIIC"), is a Delaware corporation which maintains its principal place of business in London, England. It has never engaged in business in Delaware. The individual defendants, Leonard S. Polonsky and Jay B. Polonsky, are the principal owners of AIIC. They are both United States citizens. Leonard Polonsky resides in England, Jay in New York. They are also principal owners of defendant Associated Investors ("AI"), a New York partnership doing business in New York as a securities broker dealer.

Beginning in 1962, Leonard Polonsky, and later AIIC, served as LACOP's exclusive representative for the sale of plaintiff's insurance outside the United States and Puerto Rico. In December of 1967, LACOP, AIIC, and Leonard Polonsky entered into a series of written contracts (the "December 1967 Agreements") whereby Leonard Polonsky was named general manager of LACOP's international division and AIIC was appointed LACOP's exclusive overseas sales representative. Discord and conflict with regard to the December 1967 Agreements have given rise to this and other litigation.

On August 27, 1971, AIIC brought suit against LACOP seeking damages and other relief for breach of its December 1967 contract. That action, entitled Associated Investors International Corporation v. Life Assurance Company of Pennsylvania, (hereinafter the "English action"), is currently pending in the High Court of Justice, Queen's Bench Division, in London, England (1971–A–No. 3646). Although it has now been pending before that tribunal for more than two years, the English action has evidently yet to progress beyond the pleadings stage. And counsel here are unable to tell the Court when the English action can be expected to come to trial.

On February 26, 1973, LACOP brought this suit to rescind the December 1967 Agreements for fraud in the inducement, to obtain restitution of monies paid pursuant to those contracts, and for an accounting for breaches of fiduciary duties. On April 9, the defendants moved for dismissal of LACOP's action on the ground of *forum non conveniens*, or, in the alternative, for a stay pending the final determination of the English action. At that time, defendant AI also moved to vacate this Court's Order of Sequestration, dated February 26, 1973, of AI's stock in various Delaware corporations. This is the Court's decision on those motions.

■ First, as regards defendants' alternate motions for dismissal for *forum non conveniens* or stay pending the outcome of the English action "[t]he matter is one to be determined as a discretionary act in the light of all the facts and circumstances and in the interest of expeditious and economic administration of justice." General Foods Corporation v. Cyro-Maid, Inc., 41 Del.Ch. 474, 481, 198 A.2d 681, 685 (Sup.Ct.1964). McWane Cast Iron P. Corp. v. McDowell-Wellman E. Co., Del.Supr., 263 A.2d 281 (1970).

Application of the doctrine of *forum non conveniens* "presupposes at least two forums in which the defendant is amenable to process;[1] the doctrine furnishes criteria for choice between them." Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 507, 508, 67 S.Ct. 839, 842, 91 L.Ed. 1055, 1061 (1947); Dietrich v. Texas National Petroleum Co., 6 Storey 435, 193 A.2d 579 (Super.Ct.1963). These criteria are similar to those applied in deciding a motion to stay pending the outcome of other litigation. General Foods Corporation v. Cyro-Maid, Inc., *supra,* 41 Del.Ch. at 479, 198 A.2d at 683. But the burden on the movant differs according to the motion made. "[T]he burden on the moving party is a lesser one when a stay rather than a dismissal is sought." Moore Golf, Inc. v. Ewing, Del. Supr., 269 A.2d 51 (1970); Fast Foodmakers, Inc. v. Greisler, Del.Super., 290 A.2d 1 (1972); McWane Cast Iron P. Corp. v. McDowell-Wellman E. Co., *supra.*

■ Therefore, the Court must approach the defendants' dismissal motion here with special caution. This Court, like any other, "should not lightly permit its clear jurisdiction in a matter to be rendered nugatory." General Foods Corporation v. Cyro-Maid, Inc., 41 Del.Ch. 270, 274, 194 A.2d 43, 45 (Ch.1963); Fenix & Scisson, Inc. v. Underground Storage, Inc., Del.Super., 262 A.2d 260 (1970).

■ The various criteria essential to an invocation of the doctrine of *forum non conveniens* have been set forth in earlier Delaware cases. They include:

(1) The applicability of Delaware law;

(2) The relative ease of access to proof;

(3) The availability of compulsory process for witnesses;

(4) The possibility of the view of premises;

(5) The pendency or nonpendency of a similar action or actions in another jurisdiction; and

(6) All other practical considerations which would make the trial easy, expeditious and inexpensive.

Parvin v. Kaufmann, 43 Del.Ch. 461, 463, 236 A.2d 425, 427 (Sup.Ct.1967); General Foods Corporation v. Cyro-Maid, Inc., 41 Del.Ch. 474, 198 A.2d 681 (Sup.Ct.1964).

■ Given these criteria, the peculiar circumstances of this case, and the necessary predilection against dismissal, the Court concludes that the defendants are not entitled to a dismissal.

Delaware law is, admittedly, inapplicable. And much of the evidence and many of the witnesses are, apparently, in England. But two of the defendants here, Jay Polonsky and AI, were not subject to English jurisdiction at the commencement of the English action. Therefore, they could not, at that time, be included in LACOP's counterclaim in England. Moreover, LACOP's suit here is for rescission of all the December 1967 Agreements for fraud. The English action is for breach of just one of the series of contracts that constitute the December 1967 Agreements (the one between AIIC and LACOP). Since Jay Polonsky and AI are now willing to submit to the jurisdiction of the English courts,

---

1. Although defendants Jay Polonsky and AI were not subject to the jurisdiction of the English courts at the time the English action was filed, they have subsequently offered to consent to English jurisdiction.

LACOP could amend its English counterclaim to include those parties and a claim for rescission for fraud. However, these actions have yet to take place. Moreover, an offer of voluntary submission to the foreign jurisdiction has not been considered significant in a *forum non conveniens* context. Parvin v. Kaufmann, *supra;* Dietrich v. Texas National Petroleum Co., *supra.*

The Court is likewise concerned about the lack of progress in the English action, as well as the supposed discovery disadvantage LACOP would have under English procedures in contrast to Delaware law. Such discovery considerations were deemed important by the Supreme Court in United Engines, Inc. v. Sperry Rand Corporation, Del.Supr., 269 A.2d 221 (1970). This being so, it would be unwise for the Court to completely relinquish its hold on this case at this time. Defendants' motion to dismiss for *forum non conveniens* is denied. Kolber v. Holyoke Shares, Inc., 9 Storey 66, 213 A.2d 444 (Sup.Ct. 1965); compare Winsor v. United Air Lines, 2 Storey 161, 154 A.2d 561 (Super.Ct. 1958).

■■ On the other hand, since there is a prior action pending in England which should eventually resolve many, if not all, of the issues before this Court, the stay policy set forth by Justice Herrmann in the *McWane* case, *supra*, is significant.

". . . a Delaware action will not be stayed as a matter of right by reason of a prior action pending in another jurisdiction involving the same parties and the same issues; . . . such stay may be warranted, however, by facts and circumstances sufficient to move the discretion of the Court; . . . such discretion should be exercised freely in favor of the stay when there is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same parties and the same issues; . . . as a general rule, litigation should be confined to the forum in which it is first commenced, and a defendant should not be permitted to defeat the plaintiff's choice of forum in pending suit by commencing litigation involving the same cause of action in another jurisdiction of its own choosing; . . . these concepts are impelled by considerations of comity and the necessities of an orderly and efficient administration of justice." 263 A.2d at 283.

Moreover, an absolute identity of issues and participants are not always necessary prerequisites for a stay. Lanova Corporation v. Atlas Imperial Diesel Engine Co., 5 Del.Super. 593, 64 A.2d 419 (Super.Ct. 1949); Western Saving Fund Society of Phil. v. A. V. C. Corp., Del.Super., 305 A. 2d 632 (1973).

Although it is somewhat unseemly for a Delaware corporation to struggle against being sued in a Delaware court, the mere fact that AIIC is incorporated here does not automatically guarantee denial of its motion to stay this proceeding. The Court must weigh all the pertinent facts and circumstances before deciding whether a stay is justified. It must balance the potential disadvantages of English discovery procedure against the probable efficiency of allowing completion of the English action before further proceedings here. It must balance the present lack of complete identity of parties and issues in these two actions against the possibility of conflicting rulings which could come forth if both were allowed to proceed simultaneously. Such balancing and weighing calls on the peculiar discretion of the Court to responsibly manage its own docket.

The plaintiff correctly contends that the inapplicability of Delaware law to its suit is not dispositive of defendants' motion to stay. It is also not dispositive that none of the potential witnesses reside in Delaware, that many may not be compelled to testify in Delaware, and that none of the actions complained of occurred in Delaware. Nevertheless, these are all considerations which the Court cannot ignore in deciding whether or not to grant a stay. Neither can the Court overlook the fact that the English action was brought first and that

it may render moot many, if not all, of the questions pending before this Court. Lastly, along with these considerations of comity and efficient judicial administration, the Court must not forget that to deny this stay could effectively deprive AIIC of its choice of forum. On balance, the defendants have tipped the scales sufficiently to justify the Court's discretion in their favor on the issue of a stay.[2]

This case is admittedly more difficult for the defendants than the *McWane* case because the plaintiff here could not obtain jurisdiction over Jay Polonsky and AI in England in the first instance and thus resort to some other jurisdiction was necessary. Thus, this action was not mere optional forum shopping.

But granting that resort to this Court was necessary and served a useful purpose and granting that a *forum non conveniens* motion should not be granted on the willingness of the defendants to appear in England, should this Court require the wasteful duplication of time, effort, and expense that occurs when judges, lawyers, parties, and witnesses are simultaneously engaged in the adjudication of basically the same cause in two courts? Even without relying on the possibility of inconsistent rulings and judgments, duplicate litigation is unbusinesslike and inefficient administration of justice. The effort here should be to get all the litigation in one court and one cannot help but feel that

there would be less waste if the entire case were funneled to the Court which has been exercising jurisdiction for two years in a jurisdiction which has some connection with the subject matter of the litigation. See Judge Walsh's excellent analysis in Western Saving Fund Society of Phil. v. A. V. C. Corp., *supra*.

Accordingly, defendants' motion to stay this proceeding pending the outcome of the English action will be granted. However, this Court has the power to impose such conditions on a stay as it "may deem necessary and proper for the continuing control of the cause on its docket." McWane Cast Iron P. Corp. v. McDowell-Wellman E. Co., *supra*, 263 A.2d at 284. And, here, the Court believes that two important conditions are necessary to properly implement a stay.

These conditions are as follows:

First, if, within thirty days of the order entered pursuant to this opinion, LACOP files to amend its counterclaim in the English action to include its claims for rescission and accounting and joins AI and Jay Polonsky as parties in the English action, and if the amendment is allowed, AI and Jay Polonsky shall immediately and fully submit to jurisdiction in England (within twenty days of the allowance of the amendment).

Second, all parties herein involved shall cooperate voluntarily in the English action

2. The plaintiff relies on Chadwick v. Gill, 16 Del.Ch. 127, 141 A. 618, 619 (Ch. 1928) for the proposition that the burden is on the defendants to make a showing of special facts or circumstances warranting a stay order. Moreover, the plaintiff argues that the *Chadwick* case was cited with approval by the Supreme Court in the *McWane* case, *supra*. But a closer reading of the *McWane* case shows the Supreme Court there attempted to use several points from several cases to formulate a new balancing test for stays. That test as therein stated by Justice Herrmann is hardly an endorsement of the *Chadwick* opinion. Indeed, subsequently in United Engines, Inc. v. Sperry Rand Corporation, *supra*, the Supreme Court reversed the Su-

perior Court where the trial judge, before the *McWane* opinion, had placed reliance on Chadwick v. Gill [see Sperry Rand Corporation v. United Engines, Inc., Del.Super., 261 A.2d 527 (1969)] and the Supreme Court relied on the *McWane* opinion exclusively. The *Chadwick* case is difficult to reconcile with the *McWane* case and must be questioned as authority except as used limitedly in the language of the test formulated in the *McWane* opinion. The burden is on the party seeking the stay, as in *Chadwick*, but under *McWane* facts and circumstances, discretion should now be "freely exercised" and that is hard to reconcile with the "special circumstances" test required in *Chadwick* in a very similar factual context.

to allow as full and complete discovery as would be provided under Delaware law.

If either of these conditions are not satisfied, LACOP may come into this Court with a motion to dissolve the stay and renew its action. Likewise, if there is further inordinate delay in the progress of the English action, LACOP will be justified in seeking dissolution of the stay. In this regard, the Court, operating somewhat blindly, feels substantial progress toward trial should be made within nine months. It is the Court's hope that this stay, with its conditions, will provide the necessary impetus to the litigation in England, the forum where the conflicts between these parties can more properly be resolved.

■ Lastly, turning to AI's motion to vacate the sequestration of its stock, the Court need not devote much time to such a request. In order to obtain jurisdiction over AI, an order was signed on February 26, 1973, sequestering AI's stock in various Delaware corporations.

AI is a securities broker-dealer and a "market maker" in certain stocks. Therefore, in keeping with the needs of its business, AI claims that it holds shares in its name which are, in actuality, owned by other parties. Delaware law requires that such nominee stock seized pursuant to a sequestration order be released.

> "Once, it is called to the court's attention that the interest which has been seized is the property of another, or is held for the benefit of another, then of course justice requires that the property be released."

Nickson v. Filtrol Corporation, Del.Ch., 265 A.2d 425 (1970). See also Yancey v. National Trust Company, Del.Supr., 251 A.2d 561 (1969); Rebstock v. Lutz, 39 Del.Ch. 25, 158 A.2d 487 (Sup.Ct.1960).

Claiming that "almost the entire value of the securities purportedly seized under this sequestration order is beneficially and equitably owned not by AI, but rather by AI's stock brokerage customers, who are strangers to this dispute," AI now moves to have the sequestration of February 26 vacated. However, AI refuses LACOP's request to provide a list showing either the number of sequestered shares that are held of record on behalf of customers or the number of sequestered shares owned beneficially by AI. In short, AI claims some but not all of the shares should be released but refuses to tell LACOP or the Court which ones. Rather, it attempts to vacate the entire sequestration including a portion admittedly proper.

LACOP has identified and obtained a Court order sequestering all the stock legally held in AI's name. The record now before the Court indicates that the requirements of 10 Del.C., § 366 and Chancery Court Rule 4(db), Del.C.Ann., have been satisfied. Until AI provides satisfactory evidence to the contrary, the Court can only conclude that the shares in question have been properly sequestered. Steinberg v. Shields, 38 Del.Ch. 423, 153 A.2d 599. Defendant AI's motion to vacate the sequestration is without merit and is denied. Indeed, the position of AI impresses this Court not only as a frivolous trifling with the Court but also a disregard for the interest of the customers of AI. LACOP as opposing litigant has conceded the propriety of the release of customer shares and has done all in its power to accomplish such release. Customer shares remain sequestered by the deliberate omission to act by AI.

The defendants should present an order, on notice, within ten days.