# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRIGHT DATA, INC. and<br>BRIGHT DATA, LTD., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. N23C-01-229 SKR CCLD |
| | ) | |
| META PLATFORMS, INC., and<br>INSTAGRAM, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: June 27, 2023
Decided: August 18, 2023

## MEMORANDUM OPINION AND ORDER

*Upon Consideration of Defendant's Motion to Stay Proceedings*:

## GRANTED.

David Wilks, Esquire, and D. Charles Vavala III, Esquire, of WILKS LAW LLC, Wilmington, Delaware, for Plaintiffs Bright Data Inc. and Bright Data Ltd.

Karen Jacobs, Esquire, Alexandra Cumings, Esquire, and Stephanie Rudolph, Esquire, of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware, for Defendants Meta Platforms, Inc. and Instagram LLC.

**RENNIE, J.**

## INTRODUCTION

This memorandum opinion considers, and grants in full, Defendant Meta Platforms, Inc. ("Meta")'s motion to stay Delaware proceedings in deference to an earlier-filed pending legal action in the United States District Court for the Northern District of California (the "California Action").[1] It addresses only Meta's motion to stay, as its alternative motion to dismiss, as well as Plaintiffs Bright Data Inc. and Bright Data Limited (collectively, "Bright Data")'s motion for partial summary judgment are rendered moot by the Court's ruling. The underlying case is a breach of contract action involving the use of automation to collect or "scrape" data from Facebook and Instagram users.

## FACTUAL OVERVIEW[2]

Meta operates Facebook, a social networking website and mobile application that enables its users to create personal profiles and connect with each other on their computers and mobile devices.[3] It also operates Instagram, a photo and video sharing service, website, and mobile application.[4] To view and interact with most content on Facebook and Instagram, users must create an account and login using that account.[5] A user that is not logged into Facebook or Instagram through an

---

[1] *See Meta Platforms, Inc. v. Bright Data, Ltd.*, No. 23-cv-00077 (N.D. Cal.).
[2] Unless otherwise noted, the facts are drawn from the complaint and the record provided by the parties, which includes the complaint pending in the United States District Court for the Northern District of California.
[3] Cal. Compl. ¶ 14.
[4] *Id.* ¶ 15.
[5] *Id.* ¶ 16.

account can only view a limited amount of content before the user is redirected to a login screen.[6]

Meta has approved means for Facebook and Instagram users to share data with third parties through designated Application Programming Interfaces ("APIs").[7] It permits these third parties, such as authorized developers and businesses, to use certain APIs to access data from the Facebook and Instagram platforms, with appropriate user content.[8] But, the third parties must, among other things, agree to abide by Facebook and Instagram's Terms and Meta's Platform Terms (the "Facebook and Instagram Terms").[9] Broadly speaking, the Facebook and Instagram Terms prohibit users from engaging in unlawful activity,[10] impairing the operation of the social networks,[11] and collecting data using automated means without express permission.[12] Combined with other technological measures that Meta proactively uses, the Facebook and Instagram Terms are designed to combat "scraping" and other abuse.[13]

At this point, an explanation of what, exactly, "scraping" is seems in order. Scraping is a form of data collection that relies on unauthorized automation for the

---

[6] *Id.*

[7] *Id.* ¶ 19.

[8] *Id.*

[9] *Id.* Facebook and Instagram are distinct entities, governed by separate Terms and Conditions with largely overlapping language. So, in the interest of brevity, the Court will consolidate the two sets of Terms and Conditions for this factual recitation.

[10] *Id.* ¶¶ 22-23.

[11] *Id.* ¶¶ 24-25.

[12] *Id.* ¶¶ 26-28.

[13] *Id.* ¶¶ 29-30.

purpose of extracting data from a website or app.[14]  Under the scraping umbrella, there exist two variations: "logged-in" scraping, which involves scraping data that is behind a password-protected website, and "logged-out" scraping, which involves scraping data that is viewable without a password, but may still be subject to restrictions on access, use, and rate and data limits.[15]

Since at least April 2021, Bright Data has used automated means to scrape (and facilitate the scraping of) data from Facebook and Instagram.[16]  To do so, it has developed, maintained, and sold scraping software designed to scrape Facebook and Instagram.[17]  Bright Data has also set up and sold access to its IP address and server infrastructure used to scrape data from the platforms.[18]  This infrastructure includes, but is not necessarily limited to, Bright Data's "Facebook Scraper" tool, which scrapes Facebook users' profile information and engagement,[19] and its "Instagram Scraper" tool, which scrapes data from Instagram users' profiles and posts.[20]  Bright Data's scraping activity, and subsequent sale of scraped Instagram and Facebook user information, was not authorized by Meta.[21]

And therein lies the problem.  On November 29, 2022, Meta held a video conference with Bright Data and sent an email demanding that it: (i) remove and

---

[14] *Id.* ¶ 30.
[15] *Id.* ¶ 29.
[16] *Id.* ¶ 36.
[17] *Id.*
[18] *Id.*
[19] *Id.* ¶ 39.
[20] *Id.* ¶ 40.
[21] *Id.* ¶ 58.

cease the selling of any user data obtained from Facebook and Instagram; (ii) remove and disable any access to existing datasets of Meta users' data; and (iii) stop scraping and facilitating the scraping of Meta users' data.[22] The meeting and email were ostensibly unsuccessful, because on January 6, 2023, Meta sent Bright Data a follow-up letter reminding it of its alleged noncompliance with the Facebook and Instagram Terms.[23] Meta also demanded, once again, that Bright Data cease its data scraping activity on Facebook and Instagram.[24]

Bright Data refused. This litigation followed.

## PROCEDURAL HISTORY

Meta filed the California Action in federal court on January 6, 2023 for breach of contract and tortious interference with contract arising from Bright Data's scraping activities and sale of data from Facebook and Instagram.[25] Through the California Action, Meta seeks damages for Bright Data's alleged breach of the Facebook and Instagram Terms and to enjoin Bright Data from continuing its scraping activities going forward.[26]

The same day Meta filed the California Action, Bright Data filed a complaint in this Court based on the same set of facts (the "January 6 Lawsuit").[27] Meta removed

---

[22] *Id.* ¶ 59.
[23] *Id.* ¶ 60.
[24] *Id.*
[25] *See generally Meta Platforms, Inc. v. Bright Data, Ltd.*, No. 23-cv-00077 (N.D. Cal.), D.I. 1.
[26] *Id.*
[27] *See* D.I. 11, Ex. B.

the January 6 Lawsuit to the United States District Court for the District of Delaware on January 20, 2023.[28] Upon learning that Meta intended to transfer the January 6 Lawsuit to the Northern District of California the next business day, Bright Data voluntarily dismissed the January 6 Lawsuit on February 10, 2023.[29]

On January 30, 2023, Bright Data filed the matter *sub judice* (the "Delaware Action").[30] Through the Delaware Action, Bright Data brings substantially the same claims as it did in the January 6 Lawsuit. In fact, the petition appears nearly identical to the issues raised in the California Action: Meta alleges that Bright Data breached the Facebook and Instagram Terms, and Bright Data seeks a declaration that its conduct is permissible under the Facebook and Instagram Terms.[31]

Meta moved to stay the Delaware Action in favor of the California Action on March 6, 2023.[32] The Court heard argument on the motion on June 27, 2023.

## STANDARD OF REVIEW

Generally, the jurisdiction where an action is first filed becomes the scene of battle and courts, where subsequent proceedings are filed, will stay them in order to await the outcome of the first-filed litigation. In other words, under the Delaware

---

[28] *Bright Data, Ltd. v. Meta Platforms, Inc., et al.*, 23-cv-00073 (D. Del.), D.I. 1.

[29] *Id.*, D.I. 13.

[30] Bright Data allegedly did not scrape or offer to sell data from Facebook or Instagram until *after* the Delaware Action was filed on January 30. According to Meta, this was strategic: Bright Data scraped and sold data after the filing to "enable [itself] to pursue this lawsuit, defeat diversity, and [] try to prevent this case from being removed and then transferred to California." Def.'s Op. Br. 7-8.

[31] *Id.*, D.I. 1.

[32] D.I. 11.

Supreme Court's *forum non conveniens* framework as annunciated in *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, litigation should be confined to the jurisdiction in which it is first commenced.[33] And while the Court will not, as a matter of right, stay an action by reason of a prior filed action in another jurisdiction involving the same issues and parties, it will pay deference to the parties' first choice of forum.

Put differently, the Court has broad discretion to grant a stay where the facts and circumstances warrant it.[34] This discretion is exercised freely where there is a prior action pending elsewhere that involves the same parties and the same issues in a court capable of doing prompt and complete justice.[35] The major considerations involved when determining whether to grant a stay in a particular case are the economy of judicial effort, the efficiency of the administration of justice, and the prevention of an unwarranted delay.[36]

## ANALYSIS

### A. The California Action Constitutes a First-Filed Action.

The first question when applying the *McWane* doctrine is whether "there is a prior action pending elsewhere."[37] Bright Data, through its response, does not

---

[33] 263 A.2d 281, 283 (Del. 1970); *see also Prezant v. DeAngelis*, 636 A.2d 915, 918 (Del. 1994); *Williams Gas Supply Co. v. Apache Oil Corp.*, 594 A.2d 34, 36 (Del. 1991); *ANR Pipeline Co. v. Shell Oil Corp.*, 525 A.2d 991, 992 (Del. 1987).
[34] *McWane*, 263 A.2d at 283.
[35] *Id.*
[36] *Palmer v. Palmer*, 409 A.2d 1050, 1052 (Del. 1979).
[37] *McWane*, 263 A.2d at 283.

dispute the contours of *McWane*; instead, it argues that: (i) *McWane* is inapplicable because the Delaware Action was "simultaneously" filed with the California Action and (ii) the "standstill agreement" reached by Meta and Bright Data Limited forecloses a first-filed argument under *McWane*. This is incorrect for two reasons.

First, Bright Data did not "ha[ve] to" abandon the January 6 Lawsuit, as it contends.[38] Rather, after the parties simultaneously filed their suits on January 6, Bright Data made a strategic choice to drop the January 6 Lawsuit so as to avoid transfer to the Northern District of California.[39] In choosing to prevent transfer, Bright Data unwittingly chose to relegate itself to a later-filed status when it brought the Delaware Action on January 30, 2023. The Court will not reward that decision by reading the Delaware Action as a continuation of the January 6 Lawsuit.[40]

Second, although the parties entered into a standstill agreement in which both agreed not to argue which suit was "first filed," that commitment was expressly

---

[38] Pl.'s Answering Br. in Opp'n to Def.'s Mot. to Dismiss or Stay ("Answering Br.") at 4.
[39] *Bright Data Ltd. v. Meta Platforms, Inc., et al.*, 23-cv-00073 (D. Del.), D.I. 1, 11.
[40] This is especially true in light of the series of maneuvers Bright Data undertook in an apparent effort to block transfer of the Delaware Action to California. For example, Bright Data allegedly did not scrape or offer to sell data from Facebook or Instagram until *after* the Delaware Action was filed on January 30. According to Meta, this was strategic: Bright Data scraped and sold data after the filing to "enable [itself] to pursue this lawsuit, defeat diversity, and [] try to prevent this case from being removed and then transferred to California." Def.'s Op. Br. 7-8. Moreover, Bright Data is incorrect that *United Phosphorus, Ltd. v. Mirco-Flo*, 808 A.2d 761 (Del. 2002), stands for the proposition that the mode of dismissal "makes no difference" in determining whether a second suit warrants the same status as the first. Answering Br. 7 n.4. The first suit in *United Phosphorus* was found to be a "continuation" because it was initially dismissed by the Court, *not voluntarily abandoned by the plaintiff for strategic reasons*. *United Phosphorus*, 808 A.2d at 765.

8

limited to "suits *simultaneously* [filed] on a future agreed-upon date and time."[41] So, because the standstill agreement defines its scope based on *when* the covered lawsuits were filed, and Bright Data filed the Delaware Action *after* Meta filed the California Action, the agreement does not extend to this suit.[42] And as importantly, the agreement does not contemplate lawsuits filed by the plaintiff in this action – Bright Data, Inc. – which Bright Data admits is a distinct entity from Bright Data Limited.[43] If Meta and Bright Data Limited had intended to include third parties in the standstill agreement, they could have easily stated so, but they did not.

## B. The California Action is Entitled to Greater Deference Under *McWane*.

Having concluded that the California Action was first filed, the Court must now decide if this case involves the same parties and issues as the California Action. The Court must also consider whether the claim will be litigated promptly and completely in California. If so, allowing the Delaware Action to proceed will be a needless duplication of time and effort.

In any *McWane* analysis, the parties and issues in the competing litigations are rarely exactly identical.[44] Accordingly, the Court must balance the lack of complete identity of parties against the possibility of conflicting rulings which could result if

---

[41] Answering Br. Ex. 5 (emphasis added).

[42] The standstill agreement states, in relevant part, that "if [Meta] intend[s] to file a separate enforcement action at some point . . ., we both [will] file our respective suits simultaneously on a future agreed-upon date and time, and that neither party argue [will] that its suit was 'first filed.'" *Id.*

[43] D.I. 11, Ex. D.

[44] *Choice Hotels Intern., Inc. v. Columbus-Hunt Park DR. BNK Investors, LLC*, 2009 WL 3335332, at *7 (Del. Ch. Oct. 15, 2009).

both actions were allowed to proceed simultaneously.[45]  This balancing calls on the

peculiar discretion of the Court to responsibly manage its own docket.[46]

### 1. The California Action and the Delaware Action Involve Nearly Identical Issues.

In this case, that analysis is relatively straightforward.  It is well-settled that

*McWane* favors stay "not only where the parties and issues are identical, but also

where there exists a substantial or functional identity between the two [issues] such

that they arise out of a common nucleus of operative fact."[47]  And, as our courts

have recognized, declaratory judgment actions in one forum necessarily rest on the

same facts as an enforcement action in a different forum.[48]

For example, in *Dura Pharms., Inc. v. Scandipharm, Inc.*,[49] the Delaware Court

of Chancery noted that an Alabama suit alleging breach of contract and a Delaware

suit seeking a declaratory judgment that termination of the contract was not a breach

"involve[d] the same issues."[50]  And more recently, the Court of Chancery

concluded that a claim seeking to enjoin the breach of a non-disclosure agreement

was functionally identical to a claim for breach of the same agreement already

---

[45] *Playtex, Inc. v. Columbia Cas. Co.*, 1989 WL 40913, at *3 (Del. Super. Apr. 25, 1989).
[46] *Life Assur. Co. of Pennsylvania v. Associated Investors Intern. Corp.*, 312 A.2d 337, 341 (Del. Ch. 1973).
[47] *Tulum Mgmt. USA LLC v. Casten*, 2015 WL 7456003, at *2 (Del. Ch. Oct. 15, 2009).
[48] *See, e.g., Dura Pharms., Inc. v. Scandipharm, Inc.*, 713 A.2d 925, 930 (Del. Ch. 1998) (finding that where a plaintiff seeks a declaration that a contract is invalid, that suit arises out of the same facts as an action seeking to enforce a contract).
[49] *Id.*
[50] *Id.*

before an arbitration tribunal in *LG Electronics, Inc. v. Interdigital Communications, Inc.*[51]

Therefore, the Delaware Action – whereby Bright Data seeks a declaration that it is not bound by the Facebook and Instagram Terms – and the California Action – whereby Meta seeks to enforce the Facebook and Instagram Terms – meet *McWane*'s "substantial or functional identity" test.

### 2. The California Action and Delaware Involve Nearly Identical Parties.

Likewise, the parties in the Delaware and California Actions are also substantially identical. As with issue identity, *identical parties* are not always prerequisites to granting a motion to stay.[52] Instead, in determining party identity, Delaware courts consider parties to be "substantially the same" under *McWane* when the "related entities are involved but not named in both actions."[53] Our courts have found parties to be substantially the same when a prior-filed action involved "subsidiaries" of the parties in the Delaware case.[54]

Here, Meta Platforms, Inc. and Bright Data, Ltd. are parties to both the California and Delaware Actions. The remaining parties to the Actions are subsidiaries of those companies. Because subsidiaries are "in privity with" – and therefore

---

[51] 98 A.3d 135, 146 (Del. Ch. 2014).
[52] *W.C. McWuaide v. McQuaide*, 2005 WL 1288523, at *4 (Del. Ch. May 24, 2005).
[53] *Id.*
[54] *See, e.g., AT&T Corp. v. Prime Sec. Distributors, Inc.*, 1996 WL 633300, at *3 (Del. Ch. Oct. 24, 1996); *Sprague Elec. Co. v. Vitramon, Inc.*, 1984 WL 8273, at *1 (Del. Ch. 1984).

substantially identical to – its owners for purposes of *McWane*'s second prong,[55] the Court finds all the related entities are involved in both Actions.

### 3. The Northern District of California Is Capable of Doing Prompt and Complete Justice.

Next, the Court turns to the California court's ability to do "prompt and complete justice." Bright Data does not meaningfully contest the competency of the California federal court to decide this dispute; rather, it contends that the California court is incapable of providing "prompt justice" as defined in *McWane*.

Delaware courts, however, have consistently found federal courts to be more than capable of providing prompt and complete justice.[56] Given the Northern District of California's (relative) expertise in considering interpretation issues within the Facebook and Instagram Terms,[57] the Court has no reason to doubt its ability to do so here.

Moreover, the Court is unpersuaded by Bright Data's contention that the California court lacks jurisdiction over some of the claims in the California Action.[58] Pre-judging another Court's jurisdictional determination within the context of a

---

[55] *Id.*

[56] *See, e.g., Corwin v. Silverman*, 1999 WL 499456, at \*6 (Del. Ch. June 30, 1999); *see also Kaufman v. Kumar*, 2007 WL 1765617, at \*3 (Del. Ch. June 8, 2007).

[57] *See, e.g., Meta Platforms, Inc. v. BrandTotal Ltd.*, 2022 WL 1990225, at \*20 (N.D. Cal. June 6, 2022) (deciding substantially similar case regarding data scraping); *Facebook, Inc. v. ILikeAd Media Int'l Co. Ltd.*, 2022 WL 2289064, at \*2 (N.D. Cal. Feb. 1, 2022) (interpreting Facebook's forum-selection clause); *Be In, Inc. v. Google Inc.*, 2013 WL 5568706, at \*7 (N.D. Cal. Oct. 9, 2013) (assessing enforceability of browsewrap agreements).

[58] *See Meta Platforms, Inc. v. Bright Data, Ltd.*, No. 23-00077 (N.D. Cal), D.I. 35.

12

*McWane* analysis violates *McWane*'s very foundation. And even assuming, *arguendo*, that the Court agreed with Bright Data's position, such a finding could present an irreconcilable conflict that principles of comity are intended to defend.

Anyhow, Meta is free to challenge the Northern District of California's jurisdiction at any time during the pendency of the California Action.[59] If the California court dismisses the California Action for lack of personal jurisdiction, the parties could easily return to Delaware and lift the stay.

### 4. *All Other Discretionary Factors Favor Stay.*

Finally, the Court turns to the "other practical considerations" relevant to promoting the efficient administration of justice based on the Delaware Supreme Court's holding in *General Foods Corp. v. Cryo-Maid, Inc.*[60] As the Supreme Court recently explained, this factor is "neither hollow in meaning nor rigid in application."[61] The Court, thus, must weigh the efficient administration of justice and analogous considerations to determine whether it would be "extraordinarily expensive and cumbersome for a defendant to litigate a case in Delaware."[62]

But, as discussed above, allowing the California and Delaware Actions to proceed simultaneously would require two courts to adjudicate the same contractual dispute and risk waste of judicial resources and inconsistent resolution of the issues.

---

[59] Although it has yet to do so, and the parties are already proceeding with discovery accordingly.

[60] 198 A.2d 681 (Del. 1968).

[61] *Martinez v. E.I. DuPont de Nemours and Co., Inc.*, 86 A.3d 1102, 1112 (Del. 2014).

[62] *Id.* at 1113.

13

To that end, the Court's strong interest in ensuring that litigation remain easy, expeditious, and inexpensive is persuasive here.

And, last but not least, California has a more significant relationship to this case than Delaware. Meta's principal place of business is in California, and the only Meta witness that Bright Data names in its complaint resides in California. By contrast, the only tie this case has to Delaware is Meta's and Bright Data, Inc.'s incorporation.[63] Without more, the Court is satisfied that Delaware has no substantial interest in adjudicating this action. Allowing the California Action to move forward allows the parties to pursue their claims more economically, while placing them in their natural alignment as plaintiff and defendant.

## CONCLUSION

For the reasons set forth above, Meta's motion to stay is **GRANTED** without prejudice to Bright Data's right to reapply depending on the turn of events in the California Action. No further consideration of Meta's motion to dismiss or Bright Data's motion for partial summary judgment is necessary. Those motions are accordingly denied as **MOOT**.

**IT IS SO ORDERED**

/s/ Sheldon K. Rennie
Judge Sheldon K. Rennie

---

[63] *See Eureka Res., LLC v. Range Res.-Appalachia, LLC*, 62 A.3d 1233, 1238 (Del. Super. 2012).