**MONSANTO COMPANY, a Corporation of the State of Delaware, Plaintiff,**

v.

**AETNA CASUALTY AND SURETY COMPANY, et al., Defendants.**

Superior Court of Delaware, New Castle County.

Submitted: Aug. 26, 1988.
Decided: Oct. 21, 1988.

Richard E. Poole (argued), Richard L. Horwitz, and Kathleen T. Furey of Potter, Anderson & Corroon, and Jerold Oshinsky (argued), and Patricia A. Van Dyke, of Anderson, Baker, Kill & Olick, Washington, D.C., for plaintiff, Monsanto Co.

Robert K. Beste of Biggs & Battaglia and Timothy C. Russell (argued), Patricia A. Gotschalk of Drinker, Biddle & Reath, Washington, D.C., for defendants, American Mfr's. Mut. Ins. Co.

Roderick R. McKelvie and Francis J. Murphy of Ashby, McKelvie & Geddes and Richard L. Blatt, Robert W. Hammesfahr, and Peter M. Page of Peterson, Ross, Schloerb & Seidel, Chicago, Ill. and Michael Nussbaum (argued) of Nussbaum, Owen & Webster, Washington, D.C., for C. James Ayliffe and Lloyd's London and London Market Ins. Companies.

Judith Nichols Renzulli of Duane, Morris & Hecksher and Alan H. Silberman (argued), William T. Barker, Robert C. Johnson, and John S. Hahn, of Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill. and Stephen E. Goldman, and Frank E. Coulom, Jr. of Robinson & Cole, Hartford, Conn., for defendant, Travelers Indem. Co.

Lawrence S. Drexler of Elzufon & Associates and Joseph G. Manta (argued), Mary E. Rugala, John C. Sullivan of Manta & Welge, Philadelphia, Pa., for defendant, Liberty Mut. Ins. Co.

MARTIN, Judge.

Defendants[1] move to dismiss plaintiffs complaint on the basis of *forum non conveniens*. For the reasons stated herein, the Court denies defendants' motions.

On January 20, 1988 Monsanto filed this comprehensive action to determine Monsanto's rights and defendants obligations under primary and excess environmental liability insurance policies sold to Monsanto by the 37 defendants, in connection with environmental actions against Monsanto throughout the Country. Also, Monsanto wants injunctive relief against the defendants and recovery of compensatory damages.[2]

Travelers Indemnity Company filed a motion to dismiss or stay this action in favor of the limited Connecticut action between Monsanto and Travelers. Twenty-four other defendants have adopted Travelers' position. American Manufacturers filed a motion to dismiss this action in favor of proceeding in other states. Seven other defendants adopted American Manufacturers' position.

Monsanto is a Delaware corporation organized in 1933. Monsanto, an industrial company, manufactures chemical and agricultural products, pharmaceuticals, industrial process controls and consumer products at sites located throughout the United States. It does business worldwide, with headquarters in St. Louis, Missouri.

The defendants are 38 insurance companies that sold Monsanto liability insurance from the late 1930's through April 1, 1986. Defendants have separate policies with Monsanto, and each has its own defense to Monsanto's hazardous waste site claims made pursuant to those policies. Monsanto has held its primary liability insurance for the past fifty years with, Travelers Indemnity Company, ("Travelers") Liberty Mutual Insurance Company ("Liberty Mutual") and the Insurance Company of North America ("INA"). Travelers is incorporated in Connecticut and has its principal place of business in Hartford, Connecticut. Liberty Mutual is a Massachusetts corporation with its principal place of business in Boston. INA is a Pennsylvania corporation which has its principal place of business in Philadelphia. The majority of the remaining 34 defendants are incorporated

---

1. The defendants in this case are 38 insurance companies that sold Monsanto liability insurance.

Four (4) defendants did not file motions challenging this forum.

2. Monsanto seeks injunctive relief in a parallel action in the Chancery Court in the State of Delaware.

throughout the U.S. Eight of these defendants are incorporated in Delaware however, with the exception of American Centennial Insurance Company, none of the defendants has its principal place of business in Delaware. Thirty-three of the defendants issued excess liability policies to Monsanto and one, International Insurance Company, sold Monsanto environmental impairment liability policies. All of the defendants write premiums in Delaware and allegedly derive substantial benefits from conducting business in Delaware.

Monsanto purchased the insurance policies to protect its business activities. Monsanto's insurance program consists of a primary policy and numerous layers of excess policies to cover liability and defense costs expended after the primary coverage is exhausted. Monsanto's first layer excess policy, which provides broad coverage, is known as the umbrella policy.

Monsanto's excess policies, the layers above the umbrella policy, adopt the terms and conditions or "follow the form of" the umbrella policy.

Monsanto arranged through Thomas E. Sears, Inc., a broker, the purchase of its umbrella liability policies through the London insurance market. These policies contain a "consent-to-suit" clause which is of some importance to this litigation. Most if not all of the other policies incorporate some form of the consent-to-suit clause.[3]

The United States Environmental Protection Agency (EPA), state regulatory authorities and private third parties claim that certain materials used and/or generated by Monsanto have contaminated certain locations throughout the United States ("the Sites"). These parties have commenced actions against Monsanto relating to alleged ground water, surface water and soil contamination at the Sites, ("the Environmental Actions"). Currently, these claims pending against Monsanto involve 44 sites.[4] These claims potentially amount to hundreds of millions of dollars.

According to Monsanto, its liability policies require the defendant insurance companies to investigate, defend and indemnify Monsanto against a broad range of liability which includes the liability incurred in connection with these environmental actions.

Allegedly, Monsanto sought defense and indemnification for these claims by giving notice of such claims to some of the defendants. Some of the defendants have provided or paid for a defense of Monsanto however, they have done so under reservations of rights.

Allegedly, some insurance companies have refused to honor in full their obligations to defend and indemnify Monsanto in the Environmental Actions. However because, as Monsanto claims, the insurance companies have breached their contracts with it by refusing to honor their obligations, Monsanto filed this action seeking damages for breach of contract and a declaration of the rights of the parties under Monsanto's insurance policies.

One day prior to the filing of this suit, Travelers filed suit in the District Court in Connecticut. Travelers is seeking a declaration that its policies with Monsanto do not provide coverage for the hazardous waste claims asserted by Monsanto and that Travelers has no duty to provide a defense or to bear the costs of defense with respect to those claims. Liberty Mutual and INA filed cross-claims against Monsanto in that case. Monsanto's excess and environmental impairment liability coverages are not at issue in the Connecticut action.

---

3. *See, e.g.,* London Underwriters Policy No. SD3025(c)/UKLO644, Toth Aff. ¶¶ 8–9 (March 8, 1988).

4. None of the sites are located in Delaware. The locations of the various waste sites are as follows: Connecticut [1 site]; California [4 sites]; Idaho [1 site]; Indiana [2 sites]; Illinois [3 sites]; Louisiana [2 sites]; Massachusetts [5 sites]; Michigan [1 site]; Missouri [2 sites]; New Hampshire [2 sites]; New Jersey [5 sites]; New York [2 sites]; Ohio [2 sites]; Rhode Island [2 sites]; South Carolina [1 site]; Tennessee [3 sites]; Texas [5 sites]; Wisconsin [1 site].

**1304** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The Connecticut District Court stayed the action pending the ruling in this Court. The District Court reasons that avoidance of duplicative and piece-meal litigation requires that the Court stay the Connecticut action in favor of the more comprehensive Delaware action.[5]

The defendants now move to stay or dismiss this case based on the doctrine of *forum non conveniens*. Defendants argue that litigating this case in Delaware would cause a great burden on this Court and a great inconvenience to the parties and the taxpayers in Delaware. Since the litigation lacks significant ties to Delaware, these burdens are unnecessary. Also, defendants argue that Travelers filed the Connecticut action first and Delaware law supports allowing the prior pending action to go forth. The argument follows that this Court would condone forum shopping if it ignored the law favoring prior pending actions.

The question the Court faces is whether this Court should grant defendants' motion to dismiss based upon the doctrine of *forum non conveniens* or any other practical public policy considerations.

*The Standard Applicable to a Motion to Dismiss on the Basis of Forum Non Conveniens*

▮▮▮▮ Dismissal of an action based on the doctrine of *forum non conveniens* lies within the sound discretion of the Court. *Life Assurance Company of Pennsylvania v. Associated Investors International Corporation*, Del.Ch., 312 A.2d 337, 340 (1973) *citing inter alia, McWane Cast Iron Pipe Corporation v. McDowell–Wellman Engineering Company*, Del.Supr., 263 A.2d 281 (1970). The doctrine empowers a Court to decline jurisdiction whenever considerations of convenience, expense, and the interests of justice dictate that litigation in the forum selected by the plaintiff would be unduly inconvenient, expensive or otherwise inappropriate. *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct.

839, 91 L.Ed. 1055 (1947); *General Foods Corporation v. Cryo–Maid, Inc.*, Del. Supr., 198 A.2d 681, 684 (1964); *Clatworthy v. Shakey's, Inc.*, Del.Super., C.A. No. 87C–MY–14, 1988 WL 7620, Bush, Judge (Jan. 28, 1988).

The Courts of this State recognize that a plaintiff's choice of forum is to be afforded great deference. *See Weisberg v. Hensley*, Del.Ch., 278 A.2d 334, 338 (1971). Hence, as a general rule, "litigation should be confined to the forum in which it is commenced ..." *ANR Pipeline Company v. Shell Oil Company, et al.* Del.Supr., 525 A.2d 991, 992 (1987). *See Fast Foodmakers, Inc. v. Greisler*, Del.Super., 290 A.2d 1, 3 (1972) ("[a] court does not lightly permit its jurisdiction to be rendered nugatory or a plaintiff's choice of forum to be easily defeated"); *Dietrich v. Texas National Petroleum Co.*, Del.Super., 193 A.2d 579, 584 (1963) ("the plaintiff's choice of forum should rarely be disturbed"). *See also Chrysler Corporation v. Dann*, Del.Super., 171 A.2d 223, 226 (1961). Defendants bear the heavy burden of proving inconvenience under the doctrine of *forum non conveniens* in order to override plaintiff's choice of forum. *See Moore Golf, Inc. v. Ewing*, Del.Supr., 269 A.2d 51, 52 (1970). The Supreme Court of Delaware aptly states the standard as follows:

> The dismissal of an action on the basis of the doctrine [*forum non conveniens*], and the ultimate defeat of plaintiff's choice of forum, may occur only in the rare case in which the combination and weight of the factors to be considered balance overwhelmingly in favor of the defendant.

*Kolber v. Holyoke Shares, Inc.*, Del.Supr., 213 A.2d 444, 447 (1965).

▮▮▮▮ A *forum non conveniens* analysis, requires the Court to consider the following factors: (1) whether Delaware law is applicable; (2) the relative ease of access to proof; (3) the availability of compulsory process for witnesses; (4) the possibility of

---

**5.** *Travelers Indemnity Company v. Monsanto Company, Liberty Mutual Insurance Company* and *Insurance Company of North America,* 692 F.Supp. 90 (D.Conn.1988).

a view of the premises; (5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and (6) all other practical considerations which would make the trial easy, expeditious and inexpensive. *Parvin v. Kaufmann*, Del.Supr., 236 A.2d 425, 427 (1967). *See Reedy and Reedy v. Moore and Crabtree*, Del.Super., C.A. No. 85C–AU–26, 1986 WL 15423, Bifferato, Judge (Dec. 11, 1986) slip op at 2; *Capital Properties, Inc. v. M.H. Fishman Company, Inc. and Valve City, Inc.*, Del.Super., C.A. No. 82C–OC–32, Bifferato, Judge, (July 21, 1983) slip op. at 2; *Harry David Zutz Insurance, Inc. v. H.M.S. Associates, Limited*, Del.Super, 360 A.2d 160, 166 (1976); *Life Assurance Co. of Pennsylvania v. Associated Investors International Corp.*, Del.Ch., 312 A.2d 337, 340 (1973); *Fenix & Scisson, Inc. v. Underground Storage, Inc.*, Del.Super., 262 A.2d 260, 262 (1970). The Court will address each factor *seriatum*.

### 1. *Applicability of Delaware Law*

The defendants maintain that this Court should refrain from exercising jurisdiction since Delaware has no connection whatsoever with the underlying claims. It argues, therefore, that this Court should not be put to the onerous task of predicting and applying the substantive law of other States, but rather, should yield the evalua-

tion of coverage issues to those States that do have an interest in the outcome of this litigation.

Monsanto points out that many of its excess policies, including those sold by one of the defendants,[6] contain a consent-to-suit clause which provides that the insurer will submit to the jurisdiction of any Court of competent jurisdiction in the United States chosen by Monsanto, and that the law of the Court selected will apply to the coverage action.[7]

Many of Monsanto's other excess policies adopt the terms and conditions, "follow the form" of, or incorporate, the Lloyd's or a similar consent-to-suit provision.

The record demonstrates that defendants have not shown that Delaware law would have no application to the instant litigation. The Court will not rule, at this stage of the action, whether the consent-to-suit provisions dictate that only Delaware substantive law will apply to the issues of insurance coverage.[8] However, the consent-to-suit provisions bring in to question whether or not Delaware law must apply to the insurance coverage issues.[9] Even if the consent-to-suit provisions do not prescribe Delaware law, "[i]t is not unusual, ... for Delaware Courts to deal with open questions of law of sister States or of foreign countries." *Kolber, supra*, 213 A.2d at 446. If it were necessary to adjudicate

---

6. Underwriters at Lloyd's, London, and other companies in the London Insurance Market.

7. The consent-to-suit clause reads:
   It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.
   *See, e.g.*, Lloyd's Policy No. CX 3809, Hassett Aff. ¶ 5 (June 8, 1988).

8. Hence, the Court agrees with the London Insurers insofar as they argue that a choice of law determination is, at this stage of the litigation, premature.

9. *Capital Bank & Trust v. Associated International Insurance Company*, 576 F.Supp. 1522, 1525 (M.D.La.1984); *Lexington Insurance Company v. Union America Insurance Company*, No. 85 Civ. 9181, 1987 WL 11684 (S.D.N.Y., May 26, 1987).
   The New York Court determined that the "service of suit" provision was a valid choice of law provision;
   *Liberty Mutual Insurance Company v. Insurance Corporation of Ireland Ltd., et al.*, 693 F.Supp. 340 (W.D.Pa.1988) ["However, an agreement to a forum consent clause does not constitute a waiver of the right to removal under FSIA (Foreign Sovereign Immunities Act)"];
   *Independent Petrochem Corporation, et al. v. Aetna Casualty & Surety Company, et al.*, C.A. No. 83–3347, (D.D.C. September 7, 1988).

some or all issues of coverage using the laws of other States, this possibility alone would not weigh overwhelmingly in favor of the defendants. "... [t]he Courts of this State are frequently called upon to apply the laws of other States in deciding ·litigation brought in this State, and this should not serve as a substantial deterrent." *DeEmedio v. Nationwide Insurance Company,* Del.Super., C.A. No. 85C–FE–123, 1987 WL 6452 Bifferato, Judge (Jan. 22, 1987) slip op. at 3, *quoting Ogden Marine Drilling, Inc. v. Bucyrus–Eric Company,* Del.Super., C.A. No. 78C–OC–77, Taylor, Judge (April 1, 1981).

### 2. *Ease of Access to Proof*

Defendants argue that a declaratory judgment proceeding such as this requires intense, fact specific judicial scrutiny of the underlying environmental pollution claims on a site by site basis.[10] Some of the insurance issues likely to arise include: (i) whether there has been an "occurrence" within the meaning of the policies; (ii) whether the damage was "expected or intended" by Monsanto (iii)· the "trigger of coverage" issue; and (iv) the applicability of various exclusions, including the "pollution exclusion" and "owned property exclusion". Defendants maintain that resolution of these issues will turn upon what Monsanto expected or intended regarding its

own pollution conduct and will require extensive discovery with respect to each of the sites at issue. The parties may need to examine witnesses about the nature and extent of the pollution. The trial will require documentary evidence concerning the operation of each site, particularly waste generation and disposal activities. In addition, defendants will require evidence from residents and environmental, regulatory and enforcement officials from the area in which the Sites are located. This evidence will reveal whether Monsanto knew of the consequences of its actions. Defendants point out that since none of the Sites are located in Delaware, all of the above evidence must come from sources outside of the state. Defendants maintain that they will need to travel around the Country for depositions and transport thousands of pages of documents to this Court. Defendants conclude that this process, which is likely to take several years, will place an enormous, unjustified burden upon them.

Monsanto denies that a declaration of the parties respective rights, under the insurance contracts at issue, necessitates a site-specific inquiry. Monsanto maintains that the issue of the parties rights and obligations, under the insurance agreements, exists independently of the underlying claims of liability.[11] The Court need not conduct extensive discovery of the underly-

**10.** Defendants rely heavily on the holdings in *Westinghouse Electric Corporation v. Aetna Casualty & Surety Company,* 227 N.J.Super. 504, 547 A.2d 1167 (1988) and *Texas Eastern Transmission Corporation v. Fidelity Casualty Company,* N.J.Super., No. W–0685–07 (March 17, 1988), in support of their contentions. In *Westinghouse,* the insured sought a declaration of coverage for environmental contamination from its pipeline involving 89 potential contamination sites in various States. The New Jersey Court found that the burden placed on it would be overwhelming if it was required to be responsible for issues relating to sites outside of the State of New Jersey.

Defendants, AIG Group rely heavily upon the teaching of *Westinghouse* because it seems to support their argument. However, as plaintiff points out, a close look will disclose that the *Westinghouse* case is much larger in scope than the case *sub judice.* Also, the New Jersey Court disagreed with the vast majority of authorities which support comprehensive actions as well as

the inevitable duplication of effort caused by a fragmented approach. Another difference which defendants fail to address is that this case may not require a site-specific inquiry. It is conceivable that the Court could decide the issues as a matter of law.

**11.** In support of its contention, Philips cites the language from *Keene Corporation v. Insurance Co. of North America,* D.C.Cir., 667 F.2d 1034, 1040 (1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982), in which the Court explained:

Aetna implies that the rights and obligations created by the insurance policies cannot be determined without consideration of the facts of a particular tort suit. We have before us, however, the terms of the insurance policies and the facts of the particular types of diseases whose coverage is at issue. We are not aware or informed of any facts that would come to light in a particular tort suit that would be relevant to the determination of the policies' applicability to Keene's liability for asbestos-related injury.

ing facts regarding individual site contamination. It does not aid in construing the scope of policy coverage.

The Court agrees with Monsanto that the issues involved may not require factual discovery. The Court may use substantive law to construe the terms of the insurance policies. The Court could then extract the rights and obligations of the parties from its findings.

Courts recognize that most of the issues in insurance coverage actions are legal in nature. The Court can resolve them with little or no live testimony. *See Maremont Corporation v. Hartford Accident & Indemnity Company*, No. 83–1814, (D.D.C. Apr. 26, 1984) slip op. at 4; *Owens–Illinois, Inc. v. Aetna Casualty & Surety Company*, No. 82–89, (D.D.C. Mar. 30, 1982) slip op. at 1. If the Court needed testimonial evidence the parties could gather the evidence in the form of depositions and transport it to Delaware. The original location of documentary evidence thus cannot defeat plaintiff's choice of forum.

The Court recognizes that a lot of the defendants are from different states or outside of this Country, and that expenses will be generated by prosecuting this case in Delaware. However, this does not constitute a substantial burden. Regardless of where the suit is brought, some parties if not most, will suffer inconvenience.[12] Also, the size and financial resources available to the parties substantially attenuates these concerns.[13] This second factor does not weigh overwhelmingly in favor of the defendants.

### 3. *Availability of Compulsory Process for Witnesses*

The defendants contend that all of the potential witnesses come from other States. If this Court retained jurisdiction it would not have compulsory process over these witnesses. *See e.g.*, Del. Constitution, Art. IV, § 16. The defendants insist that even if all such witnesses voluntarily came to testify in Delaware, defendants expense would be enormous.

The Court recognizes that the availability of compulsory process is an important consideration in assessing the appropriateness of a forum. *Frutesp S.A. Agro Industrial v. Brastor Mercantile Ltd.*, Del.Ch., 11 Del.J.Corp.L. 639 (1985). However, defendants position overlooks the fact that the problem of limited compulsory process exists regardless of where the litigation commences. The record does not suggest a forum where a substantial number of witnesses exist. A Court's authority to compel a witness to appear generally extends only as far as its territorial borders. One Court will not attract more out of state

---

See also *ACandS, Inc. v. Aetna Casualty & Surety Company*, 3rd Cir., 666 F.2d 819, 822–23 (1981) ("[t]he factors that will determine the relative duties and benefits under the insurance contracts are independent of the underlying claims ..."); *W.R. Grace & Company v. AIU Insurance Company*, Mass.Super., No. 87–3050 (May 27, 1988), slip op. at 11 ("[t]he underlying asbestos-related cases are not the essence of the dispute between Grace and its excess insurers. The action presently before this court concerns the existence of, and the interpretation of excess liability insurance policies").

**12.** *Philips Petroleum Company v. Arco Alaska, Inc.*, Del.Ch., C.A. No. 7177, Walsh, V.C. (May 15, 1985).[11] *See ANR Pipeline Company v. Shell Oil Company*, Del.Ch., C.A. No. 8610, 1987 WL 11901 Berger, V.C. (May 28, 1987), *appeal dismissed*, Del.Supr., No 100, 1987, Holland, J. (June 2, 1987) (Order) (upholding contract action between Delaware corporations, notwithstanding the fact that Delaware had no other contacts to litigation and Delaware law would

not apply, where transporting witnesses to Delaware would not be a hardship to parties); *Independent Petrochemical Corporation v. Aetna Casualty & Surety Company*, No. 83–3347, 1984 WL 3656 (D.D.C. Aug. 13, 1984), slip op. at 9.

**13.** In this regard, the Court finds itself in agreement with the Court in *Travelers Indemnity Company v. Monsanto Company, Liberty Mutual Insurance Company and Insurance Company of North America*, 692 F.Supp. 90 (AHN) (D.Conn. 1988).

The litigants here are corporations which do business nationwide and face litigation in many states.... [T]he court is satisfied that neither forum is significantly more inconvenient than the other in an age where air travel, express mail, electronic data transmission, and video-taped depositions are part of the normal course of business for companies such as these. 692 F.Supp. at 92.

witnesses to voluntarily appear than another Court. Even if it does, the expense problem would still remain. American Manufacturers fails to provide a forum any more convenient than Delaware. As stated in *Parvin v. Kaufmann, supra,* 236 A.2d at 428, defendants must make a specific showing of hardship:

> Finally, defendants have not shown with any particularity that hardship will be imposed upon them by the trial of this case in Delaware. The defendants have thus failed to sustain their burden of proof. An action may not be dismissed upon bare allegations of inconvenience without an adequate showing of particulars of the hardships relied upon.

*See also Karmel v. Great Lakes Chemical Corporation,* Del.Ch. C.A. No. 6481, Hartnett, V.C. (Aug. 18, 1981) slip op. at 6. To prevail on a *forum non conveniens* motions to dismiss, defendants must identify the inconvenienced witnesses and the specific substance of their testimony. *See E.g., Development Company of America v. Insurance Company of North America,* D.Md. 249 F.Supp. 117, 118 (1966). However, the record shows none. In the absence of such a showing, defendants' compulsory process argument fails.

### 4. *The View of the Premises*

American Manufacturers contends that the view of the premises factor militates in favor of dismissal. American Manufacturers maintains that no better way exists for a fact finder to grasp conceptually the magnitude of the problems associated with waste site clean up than to visit the Sites personally. American Manufacturers in-

sists that Monsanto's state of mind during the polluting of the various Sites, is an issue in this case. Allowing on site view of these locations would yield evidence impossible to capture through photography. Since none of the Sites are located in Delaware, the trier of fact can not inspect the premises.

The Court is not persuaded, at this stage of the litigation, that a view of any Site is necessary or even relevant in adjudicating issues involving the scope of the insurance coverage.[14] *See Lumbermens Mutual Casualty Company v. S–W Industries,* No. 86–7339, (N.D. Ohio July 10, 1987) slip op. at 3, *reversed and remanded,* 6th Cir., 856 F.2d 195 (1988). This Court shares Liberty Mutual's position that this case is not waste-site specific.[15] A waste site can only offer a view of a, "hole or a pile".[16] The waste site does not offer documents or witnesses.[17] EPA documents everything about the waste sites and stores these documents at a nearby regional EPA office. "Most likely, the regional office will not be in the same State where the site is located".[18] The EPA can mail all necessary documents to this Court for review. This factor does not weigh overwhelmingly in favor of the defendants.

### 5. *Pendency or Non–Pendency of Another Action*

Delaware law practically requires the existence of another pending action, in an appropriate forum, for a party to succeed on a motion to dismiss based on *forum non conveniens.*[19]

The Delaware Supreme Court, in affirming the denial of *forum non conveniens* motion in *States Marine Lines v. Domin-*

**14.** Even if a view of any of the sites were deemed advisable, the Delaware Chancery Court has recognized that, contrary to AIG Group arguments, photographs or other audio-visual aids could be employed "without any undue inconvenience." *ANR Pipeline Co. v. Shell Oil Co., supra,* slip op. at 4.

**15.** Transcript of proceedings, at 35, *Monsanto Company v. Aetna Casualty and Surety Company, et al., North American Philips Corporation v. Aetna Casualty and Surety Company, et al.* (Aug.

26, 1988) (Nos. 88C–JA–118–1–CV, 88C–JA–155–1–CV).

**16.** *Id.* at 34.

**17.** *Id.*

**18.** *Id.*

**19.** *States Marine Lines v. Domingo,* Del.Supr., 269 A.2d 223 (1970).

*go*, Del.Supr., 269 A.2d 223 (1970), held that, "[t]he absence of such other pending action is an important, if not controlling, consideration." [20]

On January 19, 1988, Travelers filed an action in the District Court of Connecticut seeking a declaration that Travelers policies with Monsanto did not provide coverage for the hazardous waste claims asserted by Monsanto and that Travelers had no duty to provide a defense or to bear any of the costs of defense with respect to those claims.

For various reasons, the District Court in Connecticut granted Monsanto's motion to stay the proceeding.[21] The fact that the suits were filed one day apart was not considered a significant factor by the Court. The Court found that both parties had spent a large amount of time preparing their cases and, although they accused each other of forum shopping, it seemed that each party had merely exercised its privilege to bring an action in any proper forum in which the suit could be maintained. The Court also found that the relative convenience between the Federal Court in Connecticut and the Delaware state courts is not dispositive. The litigants here are corporations which do business nationwide and face litigation in many states. All appear to be amenable to suit in Delaware.[22] "Neither forum is significantly more inconvenient than the other in an age where air travel, express mail, electronic transmission and videotaped depositions are part of the normal course of business such as

these".[23] Travelers has recently initiated litigation in Delaware, and thus does not appear to be inherently disinclined toward litigating here.[24] The Courts most significant deciding factor was its responsibility to discourage duplicative and piece-meal litigation. "The avoidance of piece-meal litigation should be given great weight in the context of declaratory judgement actions because such litigation would complicate and fragment the trial of the cases and cause friction between state and federal courts".[25] The Court found it essential to manage such large scale complex litigation comprehensively.[26] To the extent that the dispute is fragmented, any effort to resolve the matter through settlement is likely to be frustrated.[27]

Travelers filed an appeal of the Court's decision granting Monsanto's stay request. However, after the opinion of *General Reinsurance Corporation v. CIBA–Geigy Corporation*, 853 F.2d 78 (2nd Cir.1988) was handed down, the appeal was withdrawn. In *CIBA–Geigy*, because of parallel state court litigation, CIBA–Geigy filed a motion to dismiss or stay one action in favor of the other. The District Court expressed its concern for piece-meal litigation and found the pending New Jersey court action a more appropriate forum than the New York forum.

On appeal, the appellate court placed the greatest weight on the avoidance of piece-meal litigation and found that the New Jersey action embraced all of the issues and that the risk of piece-meal litigation is

**20.** *Id.* at 226 (citing *Parvin v. Kaufmann, supra*). *See also, Amvest Capital Corporation v. L.I. Charters, Inc.*, Del.Super., C.A. No. 86C–AU–14, 1987 WL 16734 Ridgely, Judge (July 23, 1987), slip op. at 5; *Capital Properties, Inc. v. M.H. Fishman Co.*, Del.Super., C.A. No. 82C–OC–32, Bifferato, Judge (July 21, 1983), slip op. at 4, n. 2; *Cabot Petroleum Corp. v. Northern Natural Gas Co.*, Del.Super., C.A. No. 82C–OC–121, Balick, Judge (April 19, 1983).

**21.** *The Travelers Indemnity Company v. Monsanto Company, Liberty Mutual Insurance Company and Insurance Company of North America*, 692 F.Supp. 90 (AHN) (D.Conn.1988).

**22.** *Id.* at 92.

**23.** *Id.*

**24.** *Id.*

**25.** *Lumbermens Mutual Casualty Co. v. Connecticut Bank & Trust Co.*, 806 F.2d 411, 414 (2d Cir.1986).

**26.** *Travelers Indemnity Company v. Monsanto Company, Liberty Mutual Insurance Company and Insurance Company of North America*, 692 F.Supp. 90, 92 (D.Conn.1988).

**27.** *Id.* at 93.

real and should be avoided.[28]

The Court found that the insurance corporation conducted business on a multistate basis and could litigate in New Jersey as easily as it could in New York. Also, the Court held that prior filing was of no importance, favoring the more comprehensive case in New Jersey. These factors lead to the affirmance of the lower Court ruling.

American Manufacturers now claims that the prior pending action in Connecticut should be favored over this action because Delaware's laws require dismissing in favor of prior pending actions. "Where there is a prior action pending in another jurisdiction, in a Court capable of doing prompt and *complete* justice, the Court's discretion should be freely exercised in favor of the stay. The rationale behind the rule is to honor the plaintiff's choice of forum and to give due deference to "considerations of comity and the necessities of an orderly and *efficient* administration of justice . . ." [29]

Travelers argues that the issues are the same in both the Delaware and Connecticut actions. However, the Connecticut case does not involve all of the waste sites in the Delaware case and it does not join all of the parties.

Although Travelers argues that the established law in *Marciano v. Nakash*, Del. Ch., No. 7910, 1985 WL 11573 Berger, V.C., Slip op. at 6–7 (June 19, 1985) requires that the issues in the competing suits arise from "the same transaction or transactions", the Connecticut action is a limited action and will not dispose of these issues in as complete and efficient manner as the Delaware action would.

As the law in *Boston VLCC Tankers* demonstrates, the Court looks to the most efficient and orderly method for adjudicating a case when deciding between competing suits.

Travelers then attempts to argue that Delaware law does not require symmetry of parties as a prerequisite to the issuance of a stay.[30]

In *Life Assurance Company of Pennsylvania v. Associated Investors International Corp.*, Del.Ch., 312 A.2d 337, 341 (1973) the Court states that an absolute identity of issues and participants are not always necessary prerequisites for a stay. However, the Court goes on to reason that,

Although it is somewhat unseemly for a Delaware corporation to struggle against being sued in a Delaware court, the mere fact that AIIC is incorporated here does not automatically guarantee denial of its motion to stay this proceeding. The Court must weigh all the pertinent facts and circumstances before deciding whether a stay is justified. It must balance the potential disadvantages of English discovery procedure against the probable efficiency of allowing completion of the English action before further proceedings here. It *must balance the present lack of complete identity of parties and issues in these two actions against the possibility of conflicting rulings which could come forth if both were allowed to proceed simultaneously.* Such balancing and weighing calls on the peculiar discretion of the Court to

---

**28.** *General Reinsurance Corporation v. CIBA–Geigy Corporation,* 853 F.2d at 81 (2nd Cir. 1988).

**29.** *Boston VLCC Tankers, Inc. v. Bethlehem Steel Corporation,* Del.Super., 415 A.2d 492, 495, O'Hara, Judge (1980).

**30.** *Life Assurance Co. of Pennsylvania v. Associated Investors International Corp.,* Del.Ch., 312 A.2d 337, 341 (1973). *Arthur L. Monheit et al. v. Thomas F. O'Neil, et al.,* Del.Ch., C.A. No. 6149, Hartnett, III, V.C., slip. op. at 2 (Dec. 10, 1980)

["It is not necessary that the parties or issues in the Delaware action be identical with those in the prior actions". However, the Court goes on to reason that "It is sufficient to justify a stay if the same transaction or transactions give rise to *all of the suits,* if disposition of the prior actions will probably settle or greatly simplify the issues presented in Delaware". The Court went on to stay the Delaware action because it was likely that all of the issues arising out of the disputed transaction would be fully adjudicated.]

responsibly manage its own docket.[31]

The Court, in *Life Assurance Co. of PA* recognizes that a court entertaining the motion must weigh all relevant factors before deciding on the motion. The outcome of the motion will depend upon the facts of the case. If the facts weigh overwhelmingly on the side of one party then that party should prevail.

However, in this case, the absence of a comprehensive action involving all relevant parties would result in unnecessary expenditures, waste of time and the possibility of inconsistent results. The law established in the *Boston VLCC Tankers* case clearly prohibits this result.

The law in *Boston VLCC Tankers* provides that a stay is favored where a Court can do prompt and complete justice. However, in this case, the Connecticut Court could do neither complete nor prompt justice because many of the necessary parties are not joined in the action. Even though Travelers argues that Monsanto can join the other parties by impleading them, these parties have already indicated that they will protest joining in the Connecticut action. Thus the pursuit of the Connecticut action would not lead to a more "orderly and efficient" administration of justice. All parties necessary to completely adjudicate this case are present in the Delaware action and, the Court is not persuaded by this factor to grant defendants dismissal motion.

*McWane Cast Iron Pipe Corporation v. McDowell-Wellman E. Company*, Del. Supr., 263 A.2d 281 (1970) requires that;

> a Delaware action will not be stayed as a matter of right by reason of a prior action pending in another jurisdiction involving the same parties and the same issues; that such stay may be warranted, however, by facts and circumstances sufficient to move the discretion of the Court; that such discretion should be exercised freely in favor of the stay when there is a prior action pending else-

where, in a court capable of doing prompt and complete justice, involving the same parties and the same issues; ... We endorse the above propositions. By their application, there is avoided the wasteful duplication of time, effort and expense that occurs when judges, lawyers, parties, and witnesses are simultaneously engaged in the adjudication of the same cause of action in two courts. Also to be avoided is the possibility of inconsistent and conflicting rulings and judgments and an unseemly race by each party to trial and judgment in the forum of its choice. Public regard for busy Courts is not increased by the unbusinesslike and inefficient administration of justice such situation produces.

It should be noted that the Court specifies that the parallel cases involve the same parties and the same issues. Clearly the Delaware and Connecticut cases do not involve the same parties.

Being cognizant of all of the arguments set forth hereinabove, although a prior pending action exists, i.e., the Connecticut Court still retains jurisdiction, this Court finds that said prior pending action does not suffice as an action with the same parties and issues as the Delaware action and does not otherwise comply with Delaware law because it fails to warrant a more expeditious adjudication method than the Delaware forum. Thus, the defendants fail to supply an adequate prior pending action to weigh in their favor under the *forum non conveniens* doctrine.

### 6. Public Interest and Other Practical Considerations

A. Concerns regarding one comprehensive action versus the piece-meal approach

The defendants argue that a comprehensive adjudication of this lawsuit, unprecedented in both its complexity and breadth, will impose an unmanageable burden on this Court. The more plausible approach, according to defendants, is for the Court to

---

31. *Id.*

decline jurisdiction, allowing the litigation to proceed, presumably on a substantially smaller basis, in each of the state courts which hosts a waste site. The implication of the American Manufacturers contention is that piece-meal adjudication of the insurance coverage issues in those States having a cogent nexus with the outcome of the litigation is, for practical purposes, preferable to maintaining a comprehensive litigation in this State which has little or no interest in the outcome of the case.

Monsanto argues that the merits in favor of comprehensive litigation outweigh defendants' less significant arguments. Monsanto's insurance coverage applies generally to all of its legal liability, without specific reference to, any of the Environmental Actions. Monsanto insists that none of the defendants, including the American Manufacturers companies, required Monsanto to have site-specific or risk-specific coverage. These circumstances entitle Monsanto to a comprehensive determination of its rights under the insurance policies in question.

Based on three practical considerations, this Court finds comprehensive adjudication preferable. 1. Many Courts have adjudicated comprehensive insurance coverage actions which concern multiple environmental sites, and involve defendants from many States. 2. A comprehensive adjudication of the coverage issues eliminates the possibility of disparate or inconsistent determinations. 3. A comprehensive action would better serve Judicial economy.

### 1. *Prior Comprehensive Actions*

Defendants' contend that policy considerations dictate that Courts limit their jurisdiction to coverage issues which involve sites located within State borders. However, many Courts have adjudicated comprehensive insurance coverage actions which involve sites located in various states. *See, e.g., ACandS, Inc. v. Aetna Casualty & Surety Co.,* 3rd Cir., 764 F.2d 968 (1985) (asbestos claims in many states); *Keene Corporation v. Insurance Company of North America,* D.C.Cir., 667 F.2d 1034 (1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982) (same); *Detrex Chemical Industry v. Employers Insurance of Wausau,* N.D. Ohio, 681 F.Supp. 438 (1987) (seven environmental sites in four states); *Lac D'Amiante Du Quebec, Ltee. v. American Home Assurance Co.,* D.N.J., 613 F.Supp. 1549 (1985) (asbestos claims in many states); *Fireman's Fund Insurance Companies v. Ex–Cell–O Corporation,* E.D.Mich., 662 F.Supp. 71 (1987) (22 sites scattered throughout the country); *Employers Insurance of Wausau v. McGraw–Edison Company,* W.D.Mich., No. K 86–48, (Aug. 8, 1987), *reprinted in Mealey's Lit. Rpts.* (Insurance) 4,932 (five sites in four states).

Many courts recognize the desirability of comprehensive litigation in insurance coverage actions. *General Reins, Corp., supra,* 853 F.2d at 81.

Furthermore, insurance companies themselves, including several of the defendants here, have commenced declaratory judgment actions which relate to numerous environmental sites located throughout the Country.[32] Although the diverse nature of the cases cited in footnote 32 preclude broad generalizations, these cases evince a desirability for comprehensive litigation in insurance coverage actions involving "wide-scale latent liability of the type common to … environmental pollution cases." *Gen-*

---

**32.** *See, e.g., Travelers Indemnity Company v. Monsanto Company,* D.Conn., No. H88–34–PCD (filed Jan. 19, 1988) (44 sites); *Travelers Indemnity Company v. Allied Signal, Inc.,* D.Md., No. JFM–88–99 (filed Jan. 14, 1988) (more than 85 sites); *The Fidelity and Casualty Co. of New York v. The Texas Eastern Transmission Corp.,* N.D.Tex., No. CA3–87–2925–T (filed Dec. 11, 1987) (89 sites); *General Reinsurance Corporation v. CIBA–Geigy Corp.,* S.D.N.Y., No. 87 Civ. 8304, 1988 WL 7796 (Jan. 27, 1988) ("large num-

ber" of sites); *Employers Insurance Company of Wausau v. Xerox Corp.,* D.Conn., No. B87–625 (filed Sept. 14, 1987) (18 sites throughout United States and Canada); *Liberty Mutual Insurance Company v. Insurance Co. of Ireland,* W.D.Pa., No. 87–1907 (filed Sept. 10, 1987); *Lumbermens Mutual Casualty Co. v. SCM Corporation,* D.Del., No. 87–527 JJF (filed Oct. 6, 1987) (32 sites); *Firemen's Fund Insurance Companies v. Ex–Cell–O Corp.,* E.D.Mich., 662 F.Supp. 71 (1987) (22 sites in six states).

*eral Reins, Corp. supra*, at 81. Monsanto points out that the advent of CERCLA, the federal Superfund law, and its state counterparts, gave rise to several comprehensive insurance coverage actions involving environmental sites located throughout the United States. *See e.g., Avco Corp. v. Aetna Casualty and Surety Co., et al.*, R.I. Super., No. 87–3496 (Feb. 24, 1988) (at least 19 sites in seven states, none in forum).[33] The Court in *Travelers Indemnity Company v. Monsanto Company, et al., supra*,

By far the most significant factor—and ultimately the dispositive one—is the court's responsibility to discourage duplicative and piecemeal litigation. "[T]he avoidance of piecemeal litigation should be given great weight in the context of declaratory judgment actions because such litigation would complicate and fragment the trial of cases and cause friction between state and federal courts." *Lumbermens Mutual Casualty Co. v. Connecticut Bank & Trust Co.*, 806 F.2d 411, 414 (2d Cir.1986). The purpose of the Delaware Action is to determine the respective liabilities of all of Monsanto's insurers whose coverage is implicated in the environmental cleanup claims being lodged against Monsanto. Those claims involve hundreds of millions of dollars, for activity spanning decades at more than forty sites around the country. It is essential that such large-scale complex litigation be managed comprehensively. Such a consideration clearly rises to the level of an "exceptional circumstance." It is un-

doubtedly for that reason that the overwhelming majority of courts considering motions to stay declaratory actions regarding relatively narrow insurance coverage issues, have granted them in favor of more comprehensive lawsuits better able to resolve the narrower issues in their broader context.

692 F.Supp. at 92–93 (footnote omitted).[34] *See also Liberty Mutual Insurance Co. v. Foremost–McKesson, Inc.*, 1st Cir., 751 F.2d 475 (1985); *Travelers Indemnity Co. v. Ritchie*, D.N.J., No. 87–5036 (Feb. 16, 1988); *American Motorists Ins. Co. v. Philip Carey Corp.*, S.D.N.Y., 482 F.Supp. 711 (1980). Similarly, the Court in *Central National Insurance Co. v. Purex Corp.*, E.D.N.Y., No. 83–4077 (Mar. 6, 1984) found,

Perhaps more important, to permit Central National's present suit to proceed not only invites, it requires, piecemeal litigation. Central National has agreed that defense issues regarding the Garden City lawsuits must be pursued in the Delaware action. As a result, the continued prosecution of this lawsuit would force the parties to litigate in at least two distant forums. Even more disturbing, the continuation of this action encourages each of the individual carriers of the Purex companies to bring other splintered lawsuits in each of the States of Delaware, Texas, Washington and New Jersey where sites of each underlying claim are located.

Slip op. at 7. *Accord, FMC Corporation v. Liberty Mutual Insurance Co.*, Cal.Super.,

---

**33.** *FMC Corp. v. Liberty Mutual Insurance Co., et al.*, Cal.Super., No. 643058 (Mar. 11, 1988) (46 sites in twenty-two states), *writ of mandate denied*, Cal.App., No. H004364 (Apr. 28, 1988); *Shell Oil Co. v. Accident and Casualty Insurance Co. of Winterthur, et al.*, Cal.Super., No 278953 (principal site in Colorado); *Solvents Recovery Service v. Midland Insurance Co.*, N.J.Super., No. L–025610–83 (Nov. 17, 1986) (sites in New Hampshire and Indiana); *Textron, Inc. v. Aetna Casualty and Surety Co., et al.*, R.I.Super., No 87–3497 (Apr. 8, 1988) (at least 50 sites in numerous states); *The Upjohn Co., et al. v. Aetna Casualty and Surety Co., et al.*, W.D.Mich., No. K88–124CA4 (filed Apr. 18, 1988) (22 sites in more than six states); *Whirlpool Corporation v. Aetna Casualty and Surety Co., et al.*, Mich.Cir.,

No. 88–1062–CZ–Z (filed Apr.1988) (unspecified number of sites in six states).

**34.** At a hearing held on Monsanto's motion for temporary restraining order in the action filed in the Court of Chancery, Chancellor Allen likewise recognized that there may be inefficiency involved in litigating the insurers' obligations to Monsanto in numerous forums. *Monsanto Co. v. Aetna Casualty & Surety Co.*, Del.Ch., C.A. No. 9576, Allen, C. (Jan. 25, 1988), Transcript at 9. Without prejudging, the Chancellor further observed that "if this suit is to be litigated, it ought to be litigated in one place." *Id.* at 8.

No. 643058 (Mar. 11, 1988) (ORDER), *writ of mandate denied,* Cal.App., No. H004364 (Apr. 28, 1988); *Avco Corp. v. Aetna Casualty & Surety Co.,* R.I.Super., No. 87–3496 (Feb. 24, 1988).[35] This Court is persuaded that the reasoning in favor of a single, comprehensive action is sound.

### 2. *Inconsistent Determinations*

Monsanto finds a significant problem with American Manufacturers "site specific" approach, i.e., the possibility of inconsistent rulings.

For example, one insurance contract binds an insurance company and an insured. In some cases a single contract applies to fourteen different waste sites. Under American Manufacturers' "site specific" approach, a Court in each of the different site locations will interpret the contract. Many trials will take place. These trials will interpret the same issues between the same parties. However, the possibility exists that these Courts will arrive at inconsistent rulings. *See, e.g., Lumbermen's Mutual Casualty Co. v. Connecticut Bank & Trust Co.,* 2d Cir., 806 F.2d 411, 414–15 (1986) ("the determination of Raymark's coverage dispute with any particular insurer necessarily impacts upon the timing of the obligations of the other insurers. Lumbermens' policies must be considered as part of an inclusive controversy most appropriately decided in a single forum"). This will thwart the parties expectations of a consistent interpretation of their rights and obligations. *See e.g., Keene Corp. v. Insurance Co. of North America,* D.C.Cir., 667 F.2d 1034, 1041 (1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982).

To this extent, the Court agrees with Monsanto that defendants' approach would probably create inconsistencies. Comprehensive adjudication of the coverage issues eliminates the possibility of inconsistent determinations.

### 3. *Judicial Economy*

Judicial economy would be better served by litigating this case in a comprehensive action. The approach suggested by American Manufacturers would require individual lawsuits and duplicative pleadings. Fourteen different judges and 14 sets of counsel would have to familiarize themselves with the Monsanto insurance coverage and basic environmental issues. The same witnesses would have to testify on identical issues in possibly fourteen separate lawsuits. Inexcusable waste of Court time and tax payers money would result. Such a result would not further "the expeditious and inexpensive conduct of a trial."

In this declaratory judgment action the Court will focus on the language contained in the insurance policies.

Assuming *arguendo* that a site specific inquiry of coverage issues is advisable, the nature of this declaratory judgment case could allow the Court to decide the scope of coverage as a matter of law. Because the language of the insurance policy determines the scope of coverage, the Court will use the appropriate law to interpret the policy's meaning. To the extent that the language in any or all of the policies between Monsanto and any or all of the defendants is the same, the Court could make a comprehensive decision covering all similar policies. The Court could then apply the interpretation to each of the sites where factual issues exist.

This approach would require little time, or expense in each waste site State.[36]

### B. Public policy considerations

Defendants argue that this case lacks a sufficient connection between the action

---

**35.** In *FMC* and *Avco,* insurers filed *forum non conveniens* motions, both of which the Court denied. Subsequent to the initial ruling in *FMC,* a California appellate court denied the insurer's request for a writ of mandate, ruling that the insurer had not demonstrated that the fragmented approach "would foster judicial economy." The California appellate court was presented with, and rejected, the insurer's argument that

*Westinghouse* should have been followed in favor of site-specific litigation. See footnote 9.

**36.** For instance, in *New Castle County v. Hartford Accident & Indemnity Co.,* D.Del., 673 F.Supp. 1359 (1987), Judge Latchum resolved as a matter of law that the pollution exclusion clause is ambiguous and does not bar coverage, and that cleanup costs such as those involved

and the forum. In virtually all of the environmental insurance coverage cases litigated to date, a sufficient connection exists.[37] Defendants maintain that since none of the sites are located in Delaware, a sufficient connection does not exist.

The Court is unpersuaded by defendants' policy argument. Although the Court recognizes that a tenuous nexus exists between this State and the underlying action, this Court is not of the view that Delaware bears no relation whatsoever to this case. The Court notes that eight of the defendants are incorporated in Delaware. All of the defendants allegedly derive sums generated by writing policies in Delaware and, offer for sale in Delaware their policies of insurance. Also, Monsanto is incorporated in Delaware.

The Court is aware of the line of cases which held that incorporation in itself is not

sufficient contact with Delaware to support the selection of Delaware as a forum. *See, e.g., Texas City Refining, Inc. v. Grand Bahama Petroleum Co.,* Del.Supr., 347 A.2d 657 (1975); *In re Anta Corp.,* Del.Ch., No. 85–7991, 1987 WL 7956, Hartnett, V.C., slip op. at 3 (March 16, 1987) *Colonial Securities Corp. v. LTV Corp.,* Del.Ch. No. 79–5742, Marvel, C., slip op. at 4 (July 18, 1979).

However, the Court also notes that "Delaware has an interest in opening its Courts to Delaware citizens in order to provide them with a forum in which to seek justice. [Plaintiff] is a Delaware citizen and may look to her own State's Courts to remedy her wrongs. This is her privilege." *DeEmedio v. Nationwide Insurance Co.,* Del.Super., C.A. No. 85C–FE–123, Bifferato, Judge (Jan. 22, 1987) Slip op. at 4.[38]

The Court finds that Monsanto's incorporation along with defendants' connections

---

here are covered damages. *Id.* at 1364–67. In a subsequent opinion, Judge Latchum decided additional issues on summary judgment, including issues relating to the "occurrence" definition and the mitigation clause found in certain policies. *New Castle County v. Hartford Accident & Indemnity Co.,* D.Del., 685 F.Supp. 1321 (1988). Similarly, other Courts have granted policyholders' motions for summary judgment on the typical insurance coverage issues. *See e.g., Independent Petrochemical Corporation v. Aetna Casualty & Surety Co.,* D.D.C. 654 F.Supp. 1334 (1986) (duty to defend); *National Grange Mutual Insurance Co. v. Continental Casualty Insurance Co.,* S.D.N.Y., 650 F.Supp. 1404 (1986) (duty to defend and "expected or intended" issue); *Dayton Independent School Dist., et al. v. National Gypsum Co., et al.* E.D.Tex., 682 F.Supp. 1403 (1988) (trigger of coverage); *Pepper's Steel & Alloys, Inc., et al. v. United States Fidelity & Guarantee Co., et al.,* S.D.Fla., 668 F.Supp. 1541 (1987) (trigger of coverage, "own property exclusion," and "expected or intended" issue); *Fireman's Fund Insurance Co. v. Ex–Cell–O Corporation,* E.D.Mich., 662 F.Supp. 71 (1987) ("pollution exclusion" and "own property exclusion").

**37.** *See e.g., Avco Corp. v. Aetna Casualty and Surety Co., et al.,* R.I.Super., No. 87–3496 (Feb. 24, 1988) (insured's principal place of business located in Rhode Island); *Detrex Chemical Industries, Inc. v. Employers Insurance of Wausau,* N.D. Ohio, 681 F.Supp. 438 (1987) (two sites located in Ohio); *Employers Insurance of Wausau v. McGraw–Edison Co., et al.,* W.D.Mich., No. K86–48 CA (Aug. 8, 1987) (one site located in Michigan); *Employers Insurance of Wausau v. Xerox Corp.,* D.Conn., C.A. No. B87–625 (filed

Sept. 14, 1987) (insured's principal place of business located in Connecticut); *FMC Corp. v. Liberty Mutual Insurance Co., et al.,* Cal.Super., No 643058 (Mar. 11, 1988), *writ of mandate denied,* Cal.App., No. H004364 (Apr. 28, 1988) (seven sites located in California and insured's principal place of business formerly located in California); *Firemen's Fund Insurance Companies v. Ex–Cell–O Corp.,* E.D.Mich., 662 F.Supp. 71 (1987) (insured's principal place of business and two sites located in Michigan); *Shell Oil Co. v. Accident and Casualty Insurance Co. of Winterthur, et al.,* Cal.Super., No 278953 (one of two sites located in California); *Solvents Recovery Service v. Midland Insurance Co.,* N.J.Super., No. L–025610–83 (Nov. 17, 1987) (insured's principal place of business located in New Jersey); *Textron, Inc. v. Aetna Casualty and Surety Co., et al.,* R.I.Super., No. 87–3497 (Apr. 8, 1988) (insured's principal place of business located in Rhode Island); *The Upjohn Co., et al. v. Aetna Casualty and Surety Co., et al.,* W.D.Mich., No. K88–124CA4 (filed Apr. 18, 1988) (insured's principal place of business located in Michigan); *Whirlpool Corp. v. Aetna Casualty and Surety Co., et al.,* Mich.Cir., No. 88–1062–CZ–Z (filed Apr.1988) (insured's principal place of business and two sites located in Michigan).

**38.** The result in *DeEmedio* is not inconsistent with *Texas City Refining, Inc. v. Grand Bahama Petroleum Co.,* Del.Supr., 347 A.2d 657, 658 (1975), a *per curiam* opinion where a Court observed in dicta that a defendant's status as a Delaware corporation had "not been established" in the record in that case as an independent factor to be considered in determining whether dismissal was appropriate under *forum*

with Delaware establish a sufficient nexus to justify maintaining this case in the State of Delaware.

For the foregoing reasons the Court finds in favor of the plaintiff and DENIES defendants' motions to dismiss for *forum non conveniens.*

*non conveniens.* This case does not teach that the citizenship of a plaintiff is an improper consideration in a Court's assessment of the public interest factor.